## Case No. 5,404.

### Ex parte GIDDINGS.

[2 Gall. 55.][2]

Circuit Court, D. Massachusetts. May Term, 1814.

SEAMEN—SHIPPING FOR PRIVATEER CRUISE—DISABILITY—SHARE IN PRIZES.

If a mariner ship for a cruise on board of a privateer, and afterwards, before the departure from port on the cruise, he is disabled from duty, and leaves the privateer by common consent, he is not entitled to share in the prizes made during the cruise—aliter, if the disability occurred during the cruise.

[Cited in Nevitt v. Clarke, Case No. 10,138; The George Burnham, Id. 5,331; Neilson v. The Laura, Id. 10,092.]

1 [Reported by Albert Brunner, Esq., and here reprinted by permission.]

2 [Reported by John Gallison, Esq.]

[Appeal from the district court of the United States for the district of Massachusetts.]

In this case a petition was filed by John E. Giddings, praying to be allowed a seaman's full share of the prizes made by the privateer America, John Kehew commander, during her cruise, the proceeds of which prizes remained in the court for distribution. From the allegations and testimony in the case it appeared, that Giddings shipped as a seaman on board the ship America, in March, 1813, for a four months' cruise. That he went on board the ship and did duty, but before the cruise was actually begun, and while the ship lay in Salem harbor, in the course of his duties on board, he froze both his hands, by which accident he was wholly disabled from going on the cruise, and with the consent of all parties immediately left the ship.

Mr. Putnam, for petitioner, contended, that the enterprise had commenced, and that Giddings having been, without his default, prevented from proceeding on the cruise, was, by the ordinary rules of maritime law in regard to wages, entitled to a full share of the prize money.

Mr. Pitman, contra, admitted, that had the petitioner been on board after the commencement of the cruise, and been permitted or compelled to go, and to remain on shore, he would have been entitled; but he contended, that the cruise had not commenced, when the petitioner left the ship.

STORY, Circuit Justice (after briefly reciting the facts). The general question upon these facts is, whether a seaman, who has shipped for a cruise, and before the departure of the privateer from the port of equipment becomes disabled from proceeding on the cruise by inevitable accident, is entitled to share in the prizes taken during the cruise. No authority has been produced to support the claim, and, at the argument, it was mainly rested on the general position that the contract is not divisible, and that the performance having been prevented by inevitable casualty, the party is entitled to the benefit of the maxim, that the act of Providence does not in law prejudice any man's right. If the disability had occurred during the cruise, and the party had remained on board, or had been landed at any intermediate port, there would have been little difficulty in applying the maxim in his favor. By the settled law of the admiralty, a seaman, disabled on board a merchant ship, would, under like circumstances, have been entitled to his full wages for the whole voyage. Chandler v. Grieves, 2 H. Bl. 606. Upon principle, there does not seem any substantial reason for a different rule in the case of a seaman hired for a cruise on board of an armed ship. And this doctrine of the admiralty seems conformable to the maritime law of the most enlightened nations. See Laws of

Oleron, art. 7; of Wisbuy, art. 19; and of the Hanse Towns, art. 45; Cleirac, Us. et Cout. 17, 84, 104; Ord. de la Mar. lib. 3, tit. 4, arts. 11, 13; 1 Valin, 721, 746; Kurick, Jus. Mar. Hans. p. 678, tit. 14, art. 2. There is, however, an obvious distinction between the case of a disability, before and after the voyage is begun. The great object of the contract is to perform the voyage; and the labor done in port is considered as merely auxiliary to the enterprise. If a disability then happen before the voyage is begun, all that equity seems to require is, that the mariner should be paid a reasonable sum for services actually rendered. In cases where the mariner is wrongfully dismissed before the voyage is begun, there may be perfect justice in deciding in conformity with the rule of the Consolato del Mare (chapter 124), and of Roccus (De Nav. et Nau. note 43), that the wages shall be paid in the same manner, as if he had performed the whole voyage; yet in a similar case, the Ordinances of the Hanse Towns (article 41), and of France (lib. 3, tit. 4, art. 10), give the mariner only one-third part, and the Ordinance of Wisbuy (article 3), one-half part, of his wages, although, in case of dismissal after the voyage is begun, the whole wages are allowed. Cleirac, Us. et Cout. Oler. l. 5, § 19. And I take the settled rule in England to be, that if, after the seamen are hired, the voyage is broken up, or they are wrongfully dismissed before the voyage is begun, they are entitled to their wages during the time of their retainer, and if they have sustained any special damage, to a reasonable compensation for that also. But, if the seamen are wrongfully dismissed after the voyage is begun, they are entitled to their wages for the whole voyage. Wells v. Osman, 2 Ld. Raym. 1044; Abb. Shipp. pt. 4, c. 2, §§ 1, 5; 2 Brown. Adm. Law, 533; Robinet v. The Exeter, 2 C. Rob. Adm. 261; The Beaver, 3 C. Rob. Adm. 92; Hulle v. Heightman, 2 East, 145.

If, in a case of a wrongful dismissal so striking a distinction is made between the occurrence before and after the voyage is begun, it should seem, that upon principle it ought to prevail, where the dismissal has been by consent, and without the fault of either party. Under such circumstances the casualty ought not to be applied to the injury of either party. The Consolato del Mare (chapter 124) provides, that if a mariner shall have labored three days, and shall fall sick, the master of the ship shall pay half of the hire or wages (del salario), and if he is found in a situation not to go on board of the ship, to the knowledge of the other mariners, the master may leave him; and the same is ordered to be done, if the mariner falls sick in foreign parts. There is nothing in this regulation so intrinsically equitable, that it ought to be adopted as a general rule of law, and I have not been able to find that it is incorporated into the maritime code of any country. Neither Cleirac, nor Valin, nor Cas-

aregis speaks of it, as such, in commenting upon articles in pari materia in the respective codes under their consideration. See Cleirac, Jugemens d'Oleron, p. 17, § 7; Casaregis, Spiegazione del Consolato, p. 116, c. 124; 1 Valin, Comm. p. 74, art. 11.

On the whole, I am of opinion, that the disability having occurred before the cruise had begun, the petitioner cannot, under the circumstances, be entitled to share in the prizes taken during the cruise, in the capture of which he neither actively nor constructively assisted. If it had been necessary in this case to resort to other grounds, I should have thought, that having voluntarily gone on shore, with the consent of all parties, from inability to perform the cruise it ought to be deemed a voluntary abandonment of the contract of shipment. In this opinion the district judge concurs, and therefore the claim must be dismissed.